

## UNITED STATES DISTRICT COURT
for the
Western District of Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
) Case No. 3:14 mj 00026
The Cellular Telephone Assigned Call Number )
(434) 249-3493 )
)

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A (incorporated herein by reference)

located in the ____Western____ District of ____Virginia____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B (incorporated herein by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 841 and 846 | Unlawful Distribution of a Controlled Substance, Conspiracy to Distribute a Controlled substance |

The application is based on these facts:
See attached Affidavit in Support of Application for a Search Warrant

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Jonathan Koeppen
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/17/2014

_____
*Judge's signature*

City and state: Charlottesville, Virginia

The Honorable Joel C. Hoppe, U.S. Magistrate Judge
*Printed name and title*

SEALED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **(434) 249-3493**, WITH INTERNATIONAL MOBILE STATION EQUIPMENT IDENTITY/ ELECTRONIC SERIAL NUMBER **014034002266214** | Case No. 3:14mj00026<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Jonathan D. Koeppen, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (434) 249-3493, with International Mobile Station Equipment Identity ("IMEI") / Electronic Serial Number 014034002266214 (the "Target Cell Phone"), whose service provider is AT&T Mobility, a wireless telephone service provider headquartered at 11760 US Highway 1, North Palm Beach, Florida. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration ("DEA"), and have been since May 2005. Prior to that date, I was a patrol officer and detective with the Raleigh, North Carolina Police Department from December 1998 until January 2005. I have received extensive training in the investigation and detection of controlled substance traffickers. I have conducted and assisted in investigations into the unlawful possession and possession with the intent to distribute controlled substances, and their associated conspiracies in violation of

Title 21, United States Code, Sections 841(a) and 846. I have participated in the preparation and execution of numerous arrest and search warrants for criminal offenses involving the distribution and conspiracy to distribute controlled substances. I am aware that methamphetamine is a Schedule II Controlled Substance and I am familiar with the methods traffickers use to conduct their illegal activities to include communication methods, vehicles, text messaging, asset management, and narcotics transactions.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code 841 and 846 have been committed, are being committed, and will be committed by Alfonso LOPEZ-RIOS. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

5. In October 2014, the DEA's Richmond District Office initiated an investigation into the methamphetamine trafficking activities of Alfonso LOPEZ-RIOS. LOPEZ-RIOS is believed to be responsible for the distribution of multiple pound quantities of methamphetamine in the Charlottesville, Richmond, and Waynesboro, Virginia areas as well as the Greensboro, North Carolina area.

6. Additionally, in October 2014, DEA developed a reliable Confidential Source (hereinafter "CS"). Much of the information provided by the CS has been independently corroborated by law enforcement and is deemed to be credible.

7. The CS indicated that he/she met LOPEZ-RIOS during the summer of 2014. The CS stated that LOPEZ-RIOS has a residence in Charlottesville, Virginia and another residence in the Greensboro, North Carolina area. The CS further said that LOPEZ-RIOS is a crystal methamphetamine distributor who is obtaining his methamphetamine from North Carolina and distributing it to customers in the Charlottesville, Richmond, and Waynesboro, Virginia areas. The CS stated that on one occasion, LOPEZ-RIOS showed him/her a half pound of methamphetamine and offered to sell it to him/her for $11,000. Additionally, the CS indicated that LOPEZ-RIOS was selling between a half-pound and a pound of methamphetamine per week.

8. Beginning in October 2014, and at the direction of DEA agents, the CS contacted LOPEZ-RIOS on several occasions to negotiate the purchase price and set up a controlled purchase of one ounce of crystal methamphetamine directly from LOPEZ-RIOS, which LOPEZ-RIOS agreed to sell for $1,600.

9. On November 3, 2014, through a series of recorded telephone conversations witnessed by agents between the CS and LOPEZ-RIOS, who was utilizing the Target Cell Phone, LOPEZ-RIOS agreed to meet the CS to provide him/her with one ounce of crystal methamphetamine. During this series of conversations, LOPEZ-RIOS also utilized the Target Cell Phone to arrange the location where CS and LOPEZ-RIOS would meet.

10. Prior to the purchase, the CS and his/her vehicle were searched by agents and he/she was provided with audio and video recording devices. Agents also provided the CS with $1600 in United States currency for purchasing the ounce of methamphetamine from LOPEZ-RIOS. The CS was followed from a neutral location to the pre-arranged meeting location, where agents conducted surveillance of LOPEZ-RIOS and his meeting with the CS. LOPEZ-RIOS provided the CS with approximately two ounces of crystal methamphetamine, the second ounce which was provided to the CS on consignment.

11. Immediately following the controlled purchase, agents followed and met with the CS and took custody of the crystal methamphetamine. Agents conducted a field test analysis of the suspected methamphetamine, which tested the positive for the presence of methamphetamine. Both the CS and his/her vehicle were also searched by agents. The CS informed agents that she had given the $1600 in cash to LOPEZ-RIOS for the one ounce of methamphetamine. The CS further stated that LOPEZ-RIOS provided her with an additional ounce of methamphetamine and told her to sell the second ounce and to pay him once it had been sold.

12. On November 12, 2014, agents met with and directed the CS to meet with LOPEZ-RIOS to provide him with the $1,600 owed to him for the second ounce of methamphetamine provided to the CS on November 3, 2014. Through a recorded telephone call

4

between the CS and LOPEZ-RIOS, who was utilizing the Target Cell Phone, LOPEZ-RIOS directed the CS to meet him at a location in Charlottesville, Virginia in order for the CS to pay him the $1,600. Prior to the meeting, agents searched the CS and his/her vehicle and provided him/her with $1,600 DEA Official Advance Funds to provide to LOPEZ-RIOS. Agents also provided the CS with two recording devices. Agents followed the CS to the pre-arranged meeting location and observed him/her meet with LOPEZ-RIOS. Following the meeting, agents followed the CS to a neutral location and searched his/her vehicle. The CS informed agents that he/she provided LOPEZ-RIOS with the $1,600 and that LOPEZ-RIOS returned $280 of the currency to him/her as payment for selling the two ounces of methamphetamine. Agents took custody of the returned DEA Official Advanced Funds.

13. Agents of the DEA have probable cause to believe that a Court Order authorizing the tracking of LOPEZ-RIOS, via his cellular telephone, would assist law enforcement officers with identifying any additional residences and stash locations utilized by LOPEZ-RIOS and his co-conspirators as well as locations utilized and frequented by LOPEZ-RIOS' co-conspirators. Agents are aware that LOPEZ-RIOS maintains residences in Charlottesville, Virginia and the Greensboro, North Carolina area. The ability to track LOPEZ-RIOS location through his cellular telephone would also allow law enforcement officers to more effectively conduct surveillance of LOPEZ-RIOS and his co-conspirators, specifically when he is transporting and distributing narcotics. LOPEZ-RIOS is utilizing the Target Cell Phone as a primary means of communicating and the activity on her cellular telephone leads investigators to believe that LOPEZ-RIOS consistently has his cellular telephone in close proximity to his location.

14. In my training and experience, I have learned that AT&T Mobility is a company that provides cellular telephone access to the general public. I also know that providers of

5

cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

15. Based on my training and experience, I know that AT&T Mobility can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on AT&T Mobility's network or with such other reference points as may be reasonably available.

## AUTHORIZATION REQUEST

16. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

17. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable

6

cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

18. I further request that the Court direct AT&T Mobility to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T Mobility. I also request that the Court direct AT&T Mobility to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T Mobility's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T Mobility's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T Mobility for reasonable expenses incurred in furnishing such facilities or assistance.

19. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

3:14mj00026

20. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Jonathan D. Koeppen
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on _November 17_, 2014

_____
UNITED STATES MAGISTRATE JUDGE

8

# ATTACHMENT A

## Property to Be Searched

1. The cellular telephone assigned call number **(434) 249-3493,** with International Mobile Station Equipment Identity ("IMEI") / Electronic Serial Number 014034002266214 (the "Target Cell Phone"), whose wireless service provider is AT&T Mobility, a company headquartered at 11760 US Highway 1, North Palm Beach, Florida.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of AT&T Mobility.

# ATTACHMENT B

## Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T Mobility, AT&T Mobility is required to disclose the Location Information to the government. In addition, AT&T Mobility must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T Mobility's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T Mobility's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T Mobility for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).